UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-20330

SHEILA BUSTAMANTE,

     Plaintiff,

v.

CELEBRITY CRUISES, LTD.,
DOLPHIN ENCOUNTERS, LTD.,
and XYZ CORP.,

     Defendants.

_____/

## **COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff, SHEILA BUSTAMANTE ("BUSTAMANTE"), by and through undersigned counsel, hereby sues Defendants, CELEBRITY CRUISES ("CELEBRITY"), a foreign corporation, Dolphin Encounters, LTD., ("DOLPHIN ENCOUNTERS"), and XYZ CORP., (Collectively referred to as "Defendants"),[1] and alleges:

## **PARTIES AND JURISDICTION**

1.    This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

_____

[1] BUSTAMANTE named XYZ CORP. as a fictitious defendant until discovery reveals the actual name or corporation and/or additional entity(ies) that was(were) involved in the ownership and/or operation of the subject excursion. Should such entity(ies) be revealed, BUSTAMANTE would seek leave to substitute the legal name(s) of the entity(ies) for XYZ CORP. *See Carroll v. Set Con Indus. Inc*., CIV.A. 10-04737, 2011 WL 736478 at *3 (D.N.J. Feb. 23, 2011) ("The Fictitious Defendant Rule allows a plaintiff to initially name a 'fictitious defendant' in place of an actual person or corporation and subsequently amend the complaint to add a newly identified party even after the statute of limitations has expired."); *see also Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (holding that use of unnamed defendant is proper where discovery would uncover defendant's identity).

2.      BUSTAMANTE is *sui juris* is a resident and citizen of the state of Florida.

3.      CELEBRITY is a Liberian company with its principal place of business located in Miami, Florida.

4.      DOLPHIN ENCOUNTERS, upon information and belief, is incorporated in the Bahamas, but BUSTAMANTE reserves the right to amend this complaint if DOLPHIN ENCOUNTERS is incorporated in another jurisdiction.

5.      DOLPHIN ENCOUNTERS, upon information and belief, is incorporated in the Bahamas, but BUSTAMANTE reserves the right to amend this complaint if DOLPHIN ENCOUNTERS is incorporated in another jurisdiction.

6.      BUSTAMANTE was a lawful passenger aboard the cruise ship, the CELEBRITY *Reflection*, owned and operated by CELEBRITY.

7.      This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. §1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

8.      This Court also has admiralty jurisdiction pursuant to 28 U.S.C. §1333 as this case involves maritime torts. The type of incident and injuries suffered by BUSTAMANTE had the potential to impact maritime commerce as shoreside excursions are a part of the cruise experience and sold by cruise lines aboard their cruise ships.

9.      The claims asserted by BUSTAMANTE against DOLPHIN ENCOUNTERS are so related to the claims asserted in this action against CELEBRITY (which is within the original jurisdiction of this Honorable Court) that they form part of the same case or controversy under

Article III of the United States Constitution, and Supplemental Jurisdiction is proper under 28 U.S.C.A. § 1367.

10.    This action is being filed in this Court pursuant to the terms and conditions in the Passenger Contract Ticket issued by CELEBRITY.

11.    This Court has personal jurisdiction over CELEBRITY because:

a.    CELEBRITY's principal place of business is located within Miami-Dade County, Florida;

b.    CELEBRITY conducts substantial business within the state of Florida, including but not limited to operating cruises from Miami, Tampa, and Ft.  Lauderdale, markets cruise vacations to Floridians, contracts with several Florida companies to provision its cruises ship while in Florida ports, and employs several thousand Floridians to work at its Miami headquarters and throughout the state of Florida; and/or

c.    CELEBRITY operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

d.    CELEBRITY had an office or agency in this state and/or county; and/or

e.    CELEBRITY engaged in substantial activity within this state; and/or

f.    CELEBRITY committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193; and/or

g.    At all times material thereto, CELEBRITY owned, operated, managed, maintained and/or controlled the cruise ship, the CELEBRITY *Reflection*.

12.    This Court has personal jurisdiction over DOLPHIN ENCOUNTERS because:

a.    DOLPHIN ENCOUNTERS operates, conducts and/or engages in substantial

business or business venture(s) within the state of Florida pursuant to Florida Statute § 48.193(1)(a) and its contacts with Florida are a large part of what enables it to sell its tour packages to cruise ship passengers. These contacts include conducting an ongoing business relationship with CELEBRITY and other Florida based cruise lines for marketing and selling of tour excursions packages, including the subject excursion;

b.   DOLPHIN ENCOUNTERS maintains a bank account in Florida; receiving payment for its excursions in Florida; procuring insurance for the excursions in Florida; traveling to Florida for the purpose of soliciting business; attending business meetings in Florida associated with the provision of excursions;

c.   DOLPHIN ENCOUNTERS' substantial business in the state of Florida is conducted through agents/joint ventures, and partners, such as CELEBRITY;

d.   DOLPHIN ENCOUNTERS entered into Standard Excursion Independent Contractor Agreements with CELEBRITY to provide tours to its passengers. Pursuant to those agreements, CELEBRITY markets and sells the excursions to its passengers;

e.   DOLPHIN ENCOUNTERS acts as an agent for, partner of, and/or was engaged in a joint venture with, CELEBRITY as to the excursions provided by CELEBRITY;

f.   DOLPHIN ENCOUNTERS has agreed to indemnify CELEBRITY for the claims made in this Complaint within the meaning of Florida Statute

48.193(d);

g. At all times material thereto, DOLPHIN ENCOUNTERS entered into a contract with CELEBRITY, for the protection of CELEBRITY's passengers, wherein DOLPHIN ENCOUNTERS agreed to subject itself to the laws and jurisdiction of the state of Florida, consented to personal jurisdiction, and/or consented to venue of the United States District Court for the Southern District of Florida;

h. Within its contract with CELEBRITY, DOLPHIN ENCOUNTERS has agreed to forum selection clauses wherein disputes between it and the cruise lines are resolved in Florida courts;

i. Within the cruise ticket contract, DOLPHIN ENCOUNTERS receives the benefit of various provisions including notice of claims and forum selection clauses;

j. DOLPHIN ENCOUNTERS advertises, markets, and/or sells the subject excursion tickets through CELEBRITY's website and app, which are administered in Florida;

k. DOLPHIN ENCOUNTERS operates, conducts, engages in, or carries on a business venture in this state and/or county or has an office or agency in this state and/or county;

l. DOLPHIN ENCOUNTERS owns, uses, and/or possesses real property within the state;

m. DOLPHIN ENCOUNTERS contracted to insure a person or risk located

within this state at the time of contracting;

n.   DOLPHIN ENCOUNTERS was engaged in substantial and not isolated activity within this state;

o.   DOLPHIN ENCOUNTERS purposefully availed itself of the benefits of conducting activities within Florida by purposefully directing its activities in and toward the state, thus obtaining the benefits and protections of the state's laws;

p.   DOLPHIN ENCOUNTERS committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

13.   Alternatively, this Court has personal jurisdiction over DOLPHIN ENCOUNTERS under Fed. R. Civ. P. 4(k)(2) because:

a.   All claims alleged in this civil action are governed under Federal General Maritime Law;

b.   DOLPHIN ENCOUNTERS purposefully availed itself of the privilege of conducting activities within the United States as a whole by:

    i.   Targeting United States tourists in their promotional efforts and by advertising within the United States including through its official website and app; Facebook page; and Instagram page;

    ii.  Advertising and promoting their excursion packages through business relationships with CELEBRITY, including through its official website and app;

    iii. Selling excursion tickets through CELEBRITY's, website and app, which are administered in Florida.

14.     DOLPHIN ENCOUNTERS has engaged in substantial and not isolated activity within this state under the general jurisdiction section of Florida's Long-Arm Statute, Florida Statutes, Section 48.193(2), including, but not limited to: 1) maintaining at least one office in Florida, 2) reaching out to cruise lines in Florida and establishing long term business partnerships with them, 3) contracting with cruise lines in Florida to provide excursions to cruise line passengers, 4) entering into partnerships and/or joint ventures with cruise lines in Florida to provide excursions to cruise line passengers, 5) agreeing to insure and/or indemnify cruise lines in Florida, 6) deriving substantial revenues from business with cruise lines in Florida and, 7) having a registered agent in Florida. In the aggregate, DOLPHIN ENCOUNTERS' collective, continuous, and systematic business activities in Florida establish general jurisdiction.

15.     DOLPHIN ENCOUNTERS is and has been in the business of providing excursions to Florida/US cruise line passengers, such as BUSTAMANTE, in the Bahamas. A significant amount of DOLPHIN ENCOUNTERS' business comes from Florida-based cruise lines and their passengers, including BUSTAMANTE.

16.     Each year, many U.S. passengers travel to the Bahamas aboard the ships of Florida-based cruise lines, including with CELEBRITY. DOLPHIN ENCOUNTERS attracts these passengers, such as BUSTAMANTE, to their excursions by reaching out to Florida-based cruise lines, including CELEBRITY, establishing business partnerships with them, and entering into contracts with them.

17.     DOLPHIN ENCOUNTERS' excursions are sold by cruise lines, including CELEBRITY, to U.S. passengers, such as BUSTAMANTE.

18.     DOLPHIN ENCOUNTERS receives the benefits of the advertising efforts of Florida-based cruise lines, including CELEBRITY. For example, when passengers, such as

BUSTAMANTE, board CELEBRITY's Cruise Ships, CELEBRITY offers, recommends, and markets DOLPHIN ENCOUNTERS in the Bahamas in various places around the ship. Alternatively, CELEBRITY allows passengers, such as BUSTAMANTE, to book and pay for DOLPHIN ENCOUNTERS at the ship's Excursion Desk. There, passengers can talk to CELEBRITY crewmembers, trained by CELEBRITY to answers questions and provide information about CELEBRITY's excursions, and to assist passengers in purchasing the excursions.

19.     DOLPHIN ENCOUNTERS benefits from the cruise lines' advertising efforts in Florida directed toward the actual and potential customers of CELEBRITY in Florida.

20.     DOLPHIN ENCOUNTERS' activities evince "a general course of business activity in the State [of Florida] for pecuniary benefit." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). This continuous and systematic general business contact with Florida satisfies the requirements of the "general jurisdiction" section of the Florida Long-Arm Statute, Section 48.193(2).

21.     DOLPHIN ENCOUNTERS' activities in Florida satisfy Subsection (a) of the "Specific Jurisdiction" Section of Florida's Long-Arm Statute. At all times material, DOLPHIN ENCOUNTERS operated, conducted, engaged in, or carried on a business or business venture in this state. Fla. Stat. §48.193(1)(a).

22.     CELEBRITY, manifested an apparent agency relationship with DOLPHIN ENCOUNTERS by marketing the excursion on its website and app using the CELEBRITY logo; selling the excursion from its website and app and a desk aboard the ship; and recommending CELEBRITY's excursions over others not sold through CELEBRITY.

23.     At all times material hereto, CELEBRITY, did not identify a third-party operator as the owner and operator of the shore excursion.

24.     CELEBRITY, obtains payment for the excursions online and onboard the cruise through the guests' account.

25.     At all times material hereto, CELEBRITY, participated in the income and losses generated by the operation of the subject excursion.

26.     CELEBRITY, exercises or exercised control over the subject excursion in its requirements for its operation, insurance, and safety.

27.     CELEBRITY, has or had control over the arrangement, marketing and sales of the subject excursion.

28.     DOLPHIN ENCOUNTERS is or was an agent of CELEBRITY, partners with CELEBRITY and/or is a joint venturer with CELEBRITY. Any representations of CELEBRITY to the contrary do not control the legal status of the parties. Even if the excursion operator was an independent contractor, CELEBRITY is not relieved of its duty to verify that its representations made in its literature and elsewhere about its excursion operators are true, that is, that the insured partners adhere to the highest safety standards in the industry.

29.     This Court has personal jurisdiction over XYZ CORP. because:

q.     XYZ CORP. operates, conducts and/or engages in substantial business or business venture(s) within the state of Florida pursuant to Florida Statute § 48.193(1)(a);

r.     XYZ CORP. maintains a bank account in Florida; receiving payment in Florida; procuring insurance for the excursions in Florida; traveling to

Florida for the purpose of soliciting business; attending business meetings in Florida associated with the subject premises;

s.   XYZ CORP.'s substantial business in the state of Florida is conducted through agents/joint ventures, and partners, such as CELEBRITY and DOLPHIN ENCOUNTERS;

t.   XYZ CORP., entered into agreements with CELEBRITY and DOLPHIN ENCOUNTERS for the use of the premises. Pursuant to those agreements, CELEBRITY and DOLPHIN ENCOUNTERS markets and sells the excursions to their customers;

u.   XYZ CORP. acts as an agent for, partner of, and/or was engaged in a joint venture with, CELEBRITY and DOLPHIN ENCOUNTERS as to the excursions provided by CELEBRITY;

v.   XYZ CORP., has agreed to indemnify CELEBRITY and DOLPHIN ENCOUNTERS for the claims made in this Complaint within the meaning of Florida Statute 48.193(d);

w.   At all times material thereto, XYZ CORP. entered into a contract with CELEBRITY and DOLPHIN ENCOUNTERS for the protection of CELEBRITY and DOLPHIN ENCOUNTERS' customers, wherein XYZ CORP., agreed to subject itself to the laws and jurisdiction of the state of Florida, consented to personal jurisdiction, and/or consented to venue of the United States District Court for the Southern District of Florida;

x.   Within its contract with CELEBRITY, XYZ CORP. has agreed to forum

selection clauses wherein disputes between it and the cruise lines are resolved in Florida courts;

y.    Within the cruise ticket contract, XYZ CORP. receives the benefit of various provisions including notice of claims and forum selection clauses;

z.    XYZ CORP. advertises, markets, and/or sells the premises through websites, apps, and/or other online platforms, which are administered in Florida;

aa.   XYZ CORP. operates, conducts, engages in, or carries on a business venture in this state and/or county or has an office or agency in this state and/or county;

bb.   XYZ CORP. owns, uses, and/or possesses real property within the state;

cc.   XYZ CORP. contracted to insure a person or risk located within this state at the time of contracting;

dd.   XYZ CORP. was engaged in substantial and not isolated activity within this state;

ee.   XYZ CORP. purposefully availed itself of the benefits of conducting activities within Florida by purposefully directing its activities in and toward the state, thus obtaining the benefits and protections of the state's laws;

ff.   XYZ CORP., committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

30.    Alternatively, this Court has personal jurisdiction over XYZ CORP. under Fed. R. Civ. P. 4(k)(2) because:

c.    All claims alleged in this civil action are governed under Federal General

Maritime Law;

d.   XYZ CORP. purposefully availed itself of the privilege of conducting activities within the United States as a whole by:

iv.   Targeting United States tourists in its promotional efforts and by advertising within the United States including through online platforms;

v.   Advertising and promoting their premises through business relationships with CELEBRITY and DOLPHIN ENCOUNTERS, including through online platforms;

vi.   Doing business over online platforms that are administered in Florida.

31.   XYZ CORP. has engaged in substantial and not isolated activity within this state under the general jurisdiction section of Florida's Long-Arm Statute, Florida Statutes, Section 48.193(2), including, but not limited to: 1) maintaining at least one office in Florida, 2) reaching out to cruise lines and other businesses in Florida and establishing long term business partnerships with them, 3) contracting with cruise lines and other businesses in Florida in relation to the use of its premises, 4) entering into partnerships and/or joint ventures with cruise lines and other business in Florida for the use of its premises, 5) agreeing to insure and/or indemnify cruise lines and other businesses in Florida, 6) deriving substantial revenues from business with cruise lines and other businesses in Florida and, 7) having a registered agent in Florida. In the aggregate, XYZ CORP.'s collective, continuous, and systematic business activities in Florida establish general jurisdiction.

32.   XYZ CORP. is and has been in the business of providing its premises for use to Florida/US cruise line passengers, such as BUSTAMANTE, in the Bahamas. A significant amount of XYZ CORP.'s business comes from Florida-based cruise lines and their passengers,

including BUSTAMANTE, and other businesses.

33.     Each year, many U.S. passengers travel to the Bahamas aboard the ships of Florida-based cruise lines, including with CELEBRITY. XYZ CORP. attracts these passengers, such as BUSTAMANTE, to their excursions by reaching out to Florida-based cruise lines and other businesses, including CELEBRITY, establishing business partnerships with them, and entering into contracts with them.

34.     Use of XYZ CORP.'s premises is sold by cruise lines, including CELEBRITY, to U.S. passengers, such as BUSTAMANTE, and by other businesses.

35.     XYZ CORP. receives the benefits of the advertising efforts of Florida-based cruise lines, including CELEBRITY. For example, when passengers, such as BUSTAMANTE, board CELEBRITY's Cruise Ships, CELEBRITY offers, recommends, and markets XYZ CORP.'s premises in the Bahamas in various places around the ship.

36.     XYZ CORP. benefits from the cruise lines' and other businesses' advertising efforts in Florida directed toward the actual and potential customers of CELEBRITY and DOLPHIN ENCOUNTERS in Florida.

37.     XYZ CORP.'s activities evince "a general course of business activity in the State [of Florida] for pecuniary benefit." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). This continuous and systematic general business contact with Florida satisfies the requirements of the "general jurisdiction" section of the Florida Long-Arm Statute, Section 48.193(2).

38.     XYZ CORP.'s activities in Florida satisfy Subsection (a) of the "Specific Jurisdiction" Section of Florida's Long-Arm Statute. At all times material, XYZ CORP. operated, conducted, engaged in, or carried on a business or business venture in this state. Fla.

Stat. §48.193(1)(a).

39.    All conditions precedent for filing and maintaining this action have been fulfilled, performed, waived, or do not apply.

40.    CELEBRITY manifested an apparent agency relationship with XYZ CORP., by marketing the use of the premises on its website and app using the CELEBRITY logo; selling the use of the premises from its website and app and a desk aboard the ship; and recommending CELEBRITY's excursions, including the subject excursion, which used XYZ CORP.'s premises, over others not sold through CELEBRITY.

41.    XYZ CORP. is or was an agent of CELEBRITY and DOLPHIN ENCOUNTERS, partners with CELEBRITY and DOLPHIN ENCOUNTERS, and/or is a joint venturer with CELEBRITY and DOLPHIN ENCOUNTERS. Any representations of CELEBRITY or DOLPHIN ENCOUNTERS to the contrary do not control the legal status of the parties. Even if the premises' owner was an independent contractor, CELEBRITY and DOLPHIN ENCOUNTERS are not relieved of their duty to verify that its representations made in its literature and elsewhere about the excursion locations are true, that is, that they are safe.

42.    Defendants are subject to the jurisdiction of the courts of this State.

## **GENERAL ALLEGATIONS**

43.    CELEBRITY entered into an agreement with DOLPHIN ENCOUNTERS in which it agreed to market and sell the subject excursion to its passengers, DOLPHIN ENCOUNTERS agreed to operate the subject excursion, and CELEBRITY markets the subject excursion through its website, app, print material, onboard announcements, and onboard television programming.

44.    DOLPHIN ENCOUNTERS entered into agreements with XYZ CORP. in which XYZ CORP. agreed to let DOLPHIN ENCOUNTERS use its premises for the subject excursion,

including the subject area where BUSTAMANTE's incident occurred, and DOLPHIN ENCOUNTERS agreed to provide monetary and/or other compensation for this use.

45.     Cruise passengers cannot purchase shoreside excursions, including the subject excursion unless they have a reservation number from CELEBRITY, and have a purchase confirmation for their cruise. Once aboard the ship, cruise passengers have three ways to book excursions: 1) visit the Excursion Desk; 2) fill out the order form in the guest's stateroom; and 3) use the interactive TV system available on most ships.

46.     To entice passengers to purchase CELEBRITY's excursions, CELEBRITY represents that its guests are guaranteed that the ship will wait for the excursion to finish, and that the excursions are planned by insured partners who are supposed to adhere to the highest safety standards in the industry.

47.     BUSTAMANTE's family purchased a cruise aboard the CELEBRITY *Reflection* with CELEBRITY.

48.     After purchasing BUSTAMANTE's cruise, CELEBRITY, offered BUSTAMANTE's family different excursions to purchase. One of those excursions was the subject excursion, which her family purchased for her.

49.     The fee for the excursion was charged to BUSTAMANTE's family and collected from BUSTAMANTE's family exclusively by CELEBRITY.

50.     Based upon the advertising and the fact that they were purchasing it through CELEBRITY, BUSTAMANTE and her family believed that the excursion was operated by CELEBRITY. Moreover, BUSTAMANTE and her family trusted that being a CELEBRITY

excursion, it would adhere to the highest safety standards in the industry, as represented on CELEBRITY'S website.

51.     CELEBRITY appeared to a reasonable person such as BUSTAMANTE to be the operator of the excursion, and any representations contained in any of the fine print of its literature never expressly advised BUSTAMANTE that it was not the owner or operator of the excursion and premises, or advised BUSTAMANTE of the identity of the excursion operator and premises owner, to allow her to inquire about the owner and operator's safety measures and standards.

52.     BUSTAMANTE would not have participated in the subject excursion had she known the excursion and premises were not owned or operated by CELEBRITY.

53.     BUSTAMANTE was not warned in any other manner about the risk-creating and dangerous conditions of the subject excursion and premises she would later encounter, and if such a warning had been given, BUSTAMANTE would not have participated in the subject excursion.

54.     On December 27, 2021, the CELEBRITY *Reflection* called on the Bahamas, and BUSTAMANTE departed the ship for the subject excursion, which was sponsored by CELEBRITY.

55.     BUSTAMANTE was on the subject excursion at the Blue Lagoon Island when she was walking down a path. An unexpected abrupt vertical drop of the concrete path, which had no warning or safety marking, was grossly devoid of level sand. Unbeknownst to BUSTAMANTE, the cracked and broken sidewalk blended visually with its surroundings causing an optical illusion of levelness with adjacent sand. Without proper markings, BUSTAMANTE was not able to perceive the danger. As a result, BUSTAMANTE fell as she was walking on the path, causing her to hit her head on the concrete and to suffer severe injuries.

56.     After the incident, the staff at the excursion site came to BUSTAMANTE and applied bandages to some of her wounds, and told BUSTAMANTE's family that she was fit for an excursion. BUSTAMANTE's family took her to the ship's medical center upon returning to the ship. However, the ship did not have the proper equipment to diagnose BUSTAMANTE's injuries. The ship doctor shortly thereafter medically disembarked BUSTAMANTE and required her to leave the ship to see a doctor in the Bahamas. CELEBRITY should have taken BUSTAMANTE directly to see a doctor in the Bahamas immediately after her incident, should have reasonably coordinated with a doctor in the Bahamas, and/or taken other reasonable measures for BUSTAMANTE's health. When BUSTAMANTE presented to a shoreside hospital in the Bahamas, she was discharged without meaningful treatment and had to book a private flight to return home. As a result, BUSTAMANTE and her family lost a significant amount of expenses related to their travel.

57.     At all times material hereto, Defendants were or should have been on notice that the subject excursion was dangerous and/or risk creating. This was known to them, and/or should have been known to them. For instance, some of the reviews on well-respected travel websites, include, but are not limited to, previous passengers complaining and/or commenting about the following (and there were other complaints, comments, and/or other reviews though other sources as indicated in the last subparagraph in the list below):

a. "The whole place was dirty, no upkeep at all, sand dirty and full of debris, full of dangerous stumps that I caught my foot on[;]"[2]

---

[2]                     https://www.tripadvisor.com/Attraction_Review-g147416-d149861-Reviews-Blue_Lagoon_Island-Nassau_New_Providence_Island_Bahamas.html#REVIEWS

b. "The sand contained small stones which hurt your feet. There was also building rubble around the site in the sand which cause serious injury[;]" see Id.,

c. "[T]he sand felt like quicksand[;]" see Id.,

d. "There are rocks in the sand that are sharp and hurt your feet[;]" see Id.,

f. "[S]and dirty and full of debris, full of dangerous stumps that I caught my foot on[;]" see Id.,

g. "You can also add more sand to smooth out the beach[;]" see Id.,

h. "Over the course of the winter we get storms that bring high wave activity which can erode the sand in the lagoon[;]" see Id.,

i. Defendants were made aware through other complaints, comments, and/or other reviews about the dangers of the subject excursion and/or similar excursions, as well as about Defendants' failure to take adequate responsibility for injuries, problems, and/or other negative experiences in relation to its excursions, including, but not limited to, the subject excursion being more dangerous than people were led to believe, Defendants' lack of supervision and/or taking adequate measures to promote the safety of its excursions, and/or Defendants' failure to make amends and/or to make people whole due to the dangers of its excursions.

58. CELEBRITY knew or should have known of these dangers and/or issues as complaints, comments, and/or other reviews were either posted on its website, which it either reviewed or should have reviewed prior to BUSTAMANTE's incident, and/or other sources it either reviewed, should have reviewed, and/or otherwise been aware of prior to BUSTAMANTE's incident. In addition, before BUSTAMANTE's incident, CELEBRITY was or should have been

on notice that the subject excursion was dangerous and/or risk creating due to other cruise ship passengers being injured on similar excursions.

59.    Furthermore, Defendants acknowledged on CELEBRITY's website (but BUSTAMANTE did not see this acknowledgement prior to her cruise since her family booked her cruise and excursion for her) that the subject excursion had a "strenuous" activity level such that it

> is not recommended for guests with pre-existing medical conditions such as cardiac, respiratory, or orthopedic conditions, including joint injuries or disease, or any other serious medical condition. Guests must consider their physical fitness level and medical history when determining whether this tour is appropriate. Guests who have concerns must consult with their personal physician before engaging in any activity that may be strenuous for them, particularly those involving water-based activities. Guests should consider their swimming ability when selecting tours involving water-based activities.[3]

## COUNT I
## NEGLIGENT FAILURE TO WARN AGAINST CELEBRITY

60.    BUSTAMANTE re-alleges all allegations pled in paragraphs 1 through 59 above as if alleged fully herein.

61.    CELEBRITY, and/or its agents, servants, joint venturers, and/or employees owed BUSTAMANTE a duty to warn of dangers of which the carrier knew or reasonably should have known. This duty extends beyond the port to places where the passengers are invited to, or may reasonably be expected to, visit.

62.    CELEBRITY advertised, marketed and sold the subject excursion to BUSTAMANTE and thus should have expected BUSTAMANTE to visit it and participate in it.

---

[3] https://www.celebritycruises.com/pcp-excursions/nassau-bahamas-tours/blue-lagoon-island-vip-beach?excursionItemID=100000003354848337

63.     The dangerous and/or risk-creating conditions of the subject excursion include, but are not limited to:

    a.  Providing an excursion site that had a dangerous walkway that was not level, did not have level sand, had a dangerous section of the walk way that dropped off, that camouflaged these dangers, and was otherwise dangerous;

    b.  The use of poorly trained tour guides and excursion employees, agents, or servants;

    c.  The inadequate supervision of the excursion site, the subject area, and passengers such as BUSTAMANTE;

    d.  The inadequate supervision of passengers so as to prevent passengers suffering from previous injuries from being exposed to unnecessary risks such as those encountered during the excursion;

    e.  The shore excursion employees, agents, or servants were not properly trained or experienced;

    f.  There was no adequate warning given to passengers such as BUSTAMANTE of the dangers;

    g.  The shore excursion employees were inattentive to the health and conditions of the passengers and to the dangerous condition BUSTAMANTE encountered;

    h.  The shore excursion had prior incidents and/or reports of safety issues; and/or

    i.  Failure to monitor the excursion;

    j.  Failing to inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

    k.  Failing to inspect the excursion site and the subject area prior to use by its passengers;

    l.  Failing to train crew members, excursion employees/agents, and/or other workers in the proper procedures for identifying risk-creating conditions such as those BUSTAMANTE encountered;

    m. Failing to investigate the safety practices of the excursion site and the tour operator;

    n.  Failing to supervise the operations and safety procedures of the excursion site and the tour operator;

o. Failing to remedy the dangerous and/or risk-creating condition within a reasonable amount of time which allowed the known hazard to persist and exposed passengers to unreasonable danger;

p. The subject excursion workers were not adequately trained or competent to handle emergency situations such as BUSTAMANTE's incident;

q. The subject excursion operators did not have adequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

r. The subject excursion operators did not adequately assist and/or supervise passengers such as BUSTAMANTE;

s. The excursion employees, agents, or servants were not properly trained or experienced.

64.     Furthermore, CELEBRITY had a non-delegable duty to ensure passengers embarked and disembarked the cruise ship under reasonably safe circumstances.

65.     The dangerous conditions of the subject excursion were not open and obvious to BUSTAMANTE.

66.     CELEBRITY:

A. Had actual knowledge of the dangerous and/or risk-creating conditions in regards to the subject excursion:

a) Upon information and belief, CELEBRITY, visited and participated in the subject excursion as part of its approval process for selecting the subject excursion to be offered to its passengers and thus knew or should have known of the dangerous, risk-creating, and/or defective conditions of the subject excursion;

b) Received guest feedback of the tour in comment forms from previous participants/patrons/others within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

c) Received complaints from previous passengers within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

    d)   Was told by its passenger(s) that they suffered injuries during the subject excursion as a result of the tour operator/DOLPHIN ENCOUNTERS' negligent operation of same, i.e. as a result of the dangerous, risk-creating, and/or defective conditions of the subject excursion.

B.  Had constructive knowledge of the unreasonably dangerous and/or risk-creating conditions as they:

    a)   Existed for a sufficient length of time so that CELEBRITY should have known of them by the exercise of ordinary care when visiting the site to ensure it is safe for its passengers;

    b)   Previous incident(s) such as BUSTAMANTE'S occurred, and or complaint(s) about the dangerous, risk-creating, and/or defective conditions of the subject excursion, which are outlined in the "General Allegations" section of this complaint, were made, so as to impute notice upon CELEBRITY;

    c)   Created the dangerous and/or risk-creating conditions;

    d)   Caused BUSTAMANTE'S injuries through vicarious liability for affirmative act(s), rather than solely through premises liability, for which notice is not required.

67.    CELEBRITY, breached its duty to warn BUSTAMANTE and was negligent by:

A.  Failing to provide adequate warnings of the dangerous, risk-creating, and/or defective conditions of the subject excursion;

B.  Failing to warn BUSTAMANTE and other cruise ship passengers that CELEBRITY, does not inspect and/or maintain the subject excursion;

C.  Failing to advise BUSTAMANTE and other cruise ship passengers that CELEBRITY, does not verify that the subject excursion was reasonably safe and/or inspected;

D.  Failure to reasonably monitor the excursion;

E.  Failing to reasonably inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

F.  Failing to investigate the safety practices of the tour operator; and/or

G.  Failing to supervise the operations and safety procedures of the tour operator.

68.     As a direct and proximate result of the breach of the duty alleged above, BUSTAMANTE suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery, medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

69.     Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT II
## NEGLIGENT SELECTION AND RETENTION OF
## TOUR OPERATOR AGAINST CELEBRITY

70.     BUSTAMANTE re-alleges all allegations pled in paragraphs 1 through 59 above as if alleged fully herein.

71.     CELEBRITY, had the duty to exercise reasonable care to employ a competent and careful tour operator to perform the subject excursion;

72.     CELEBRITY, breached its duty by:

    A.  Failing to reasonably inquire into the credentials and qualifications of DOLPHIN ENCOUNTERS;

B. Failing to periodically request DOLPHIN ENCOUNTERS to provide CELEBRITY safety inspection reports of the policies and procedures as to the dangerous, risk-creating, and/or defective conditions of the subject excursion, and its excursion tours generally;

C. Selecting a tour operator that failed to adequately supervise passengers, the excursion site, and the subject area;

D. Selecting a tour operator that failed to comply with CELEBRITY's policies and procedures as to the dangerous, risk-creating, and/or defective conditions of the subject excursion;

E. Failing to institute safety inspection procedures to make sure that the dangerous and/or risk-creating conditions on the subject excursion were discovered and made safe;

F. Selecting a tour operator that failed to operate the subject excursion in a reasonably safe manner;

G. Selecting a tour operator that was inattentive of passengers' (including BUSTAMANTE'S) safety;

H. Selecting a tour operator that created and/or failed to adequately remedy the dangerous, risk-creating, and/or defective conditions of the subject excursion;

I. Selecting a tour operator that inadequately trained or hired competent workers that could adequately handle emergency situations such as BUSTAMANTE'S incident;

J. Selecting a tour operator that had inadequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

K. Selecting a tour operator that responded in an inadequate time to address and/or treat persons injured on the subject excursion.

73.    CELEBRITY, knew or reasonably should have known that the tour operator, DOLPHIN ENCOUNTERS, was incompetent or unfit to conduct the subject excursion, as:

A. The inadequate supervision of passengers such as BUSTAMANTE, the excursion site, and the subject area;

B. DOLPHIN ENCOUNTERS hired, failed to adequately train, failed to adequately supervise, and/or failed to terminate the employment of its inexperienced and/or

otherwise incompetent tour operators, supervisors, and/or other employees, agents, or servants that were responsible for the inspection, maintenance, and/or safety of the excursion site and the subject area;

C. The DOLPHIN ENCOUNTERS employees, agents, or servants were not properly trained or experienced in properly identifying, addressing, and/or otherwise dealing with the risks and dangers associated with the excursion site and the subject area;

D. The DOLPHIN ENCOUNTERS employees, agents, or servants were not properly trained or experienced in properly supervising, inspecting, maintaining, and/or otherwise promoting the safety of the excursion site and/or the subject area;

E. The DOLPHIN ENCOUNTERS employees, agents, or servants were not properly trained or experienced in instructing and warning tour participants regarding the risks and dangers associated with the excursion site and the subject area;

F. The shore excursion employees were inattentive to passengers on the subject excursion;

G. The excursion operator had prior incidents, complaints, and/or other reports (through either third parties or through its own inspections/investigations of the subject excursion) of the dangerous, risk-creating, and/or defective conditions of the subject excursion; and/or

H. CELEBRITY, failed to monitor the subject excursion.

74.     The dangerous conditions posed by the inexperienced and/or otherwise incompetent tour operator and its employees, agents, or servants were not open and obvious to BUSTAMANTE.

75.     As a direct and proximate result of the breach of the duty alleged above, BUSTAMANTE suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery, medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

76.     Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

**COUNT III**
**CLAIM FOR APPARENT AGENCY OR**
**AGENCY BY ESTOPPEL CLAIM AGAINST CELEBRITY**

77.     BUSTAMANTE re-alleges all allegations pled in paragraphs 1 through 59 above as if alleged fully herein.

78.     At all times material thereto, CELEBRITY, made manifestations that caused BUSTAMANTE to believe that DOLPHIN ENCOUNTERS had authority to act for the benefit of CELEBRITY, and that CELEBRITY was the owner of the premises. These manifestations included:

A.      CELEBRITY advertised a series of internet, brochure, and other media about the availability of the subject excursion;

B.      CELEBRITY allowed its name to be utilized in connection with the advertising of DOLPHIN ENCOUNTERS;

C.      CELEBRITY made all arrangements for the subject excursion without effectively disclosing to BUSTAMANTE that the subject excursion was being run by another entity (and/or entities);

D.      CELEBRITY represented on its website, app, and excursion brochure that excursions are planned by partners;

E.      CELEBRITY marketed the subject excursion using its company logo on its website, app, and/or in its brochures and/or its ship without effectively disclosing to BUSTAMANTE that said excursion was being run by another entity (and/or entities) or disclosing that the premises were owned by another entity;

F.      CELEBRITY maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to BUSTAMANTE that said excursion was being run by another entity (and/or entities) or disclosing that the premises were owned by another entity;

G.      Until the point that BUSTAMANTE actually participated in the subject excursion, BUSTAMANTE's exclusive contacts concerning the subject excursion was with CELEBRITY;

H.      CELEBRITY recommended to BUSTAMANTE to not engage in excursions, tours, activities that are not sold through CELEBRITY as CELEBRITY has no familiarity with other tours or their operations;

I.      CELEBRITY assured BUSTAMANTE that its insured partners adhered to the highest safety standards in the industry;

J.      The fee for the excursion was charged to BUSTAMANTE/her family, and collected from BUSTAMANTE/her family, exclusively by CELEBRITY;

K.      BUSTAMANTE'S receipts for the purchase of the subject excursion were issued exclusively by CELEBRITY; and/or

L.      CELEBRITY, integrated excursions into the cruise vacation experience.

79.     BUSTAMANTE reasonably relied on the above, to her detriment, so as to believe that DOLPHIN ENCOUNTERS' personnel were the employee(s) and/or agent(s) of

CELEBRITY, and that CELEBRITY was the owner of the premises, in choosing the subject excursion.

80.    It was reasonable to believe that DOLPHIN ENCOUNTERS' personnel were CELEBRITY's employee(s) and/or agent(s), and that CELEBRITY was the owner of the premises, because BUSTAMANTE/her family booked, paid for, and made all necessary arrangements for the subject excursion through CELEBRITY. CELEBRITY's, actions caused BUSTAMANTE to believe that DOLPHIN ENCOUNTERS and XYZ CORP. had authority to act on CELEBRITY's behalf. At no time did DOLPHIN ENCOUNTERS, CELEBRITY, or XYZ CORP., represent to BUSTAMANTE in particular or the other cruise ship's passengers in a meaningful way that DOLPHIN ENCOUNTERS' personnel were not agents or employees of CELEBRITY, or that CELEBRITY was not the owner of the premises.

81.    This reasonable reliance was detrimental because BUSTAMANTE would not have booked, paid for, and/or participated in the subject excursion or incurred any injuries had BUSTAMANTE known the subject excursion was not operated by CELEBRITY and/or that CELEBRITY was not the owner of the premises.

82.    Therefore, CELEBRITY is liable for the negligence of DOLPHIN ENCOUNTERS and XYZ CORP., which was a direct and proximate cause of BUSTAMANTE's injuries.

83.    As a result of Defendants' negligence, BUSTAMANTE suffered bodily injury(ies) and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings.  These losses are either permanent or continuing.

84.    Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

**COUNT IV**
**CLAIM FOR JOINT VENTURE BETWEEN**
**DEFENDANTS, CELEBRITY AND DOLPHIN ENCOUNTERS**

85.    BUSTAMANTE re-alleges all allegations pled in paragraphs 1 through 59 above as if alleged fully herein.

86.    At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS were engaged in a joint venture to provide excursions to passengers aboard CELEBRITY's ship(s).

87.    At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS entered into an agreement where CELEBRITY would sell the subject excursion to its passengers and DOLPHIN ENCOUNTERS would operate said excursion.

88.    As part of the joint venture, CELEBRITY, arranged for, sponsored, recommended, marketed, operated, sold, and/or collected money for the subject excursion and the money was then shared between CELEBRITY and DOLPHIN ENCOUNTERS. As its part of the joint venture, DOLPHIN ENCOUNTERS provided labor and/or operated the subject excursion.

89.     CELEBRITY, on behalf of the joint venture, charged a fee to passengers who utilized the excursion(s). The fee was split between CELEBRITY and DOLPHIN ENCOUNTERS.

90.     At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS had joint and/or shared control over each aspect of the joint venture.

91.     DOLPHIN ENCOUNTERS had control over the day-to-day working of the excursion(s).

92.     CELEBRITY, exercises control over the subject excursion by way of its requirements for its operation, insurance, and safety.

93.     CELEBRITY, had control over the arrangements, marketing, and sales of the excursion.

94.     At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS shared a common purpose: to operate the subject excursion for a profit.

95.     At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS had a propriety and/or ownership interest in the subject excursion. CELEBRITY had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such an excursion, and DOLPHIN ENCOUNTERS had a propriety interest in the time and labor expended in operating the subject excursion.

96.     At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS shared any losses sustained from the joint venture.

97.     CELEBRITY and DOLPHIN ENCOUNTERS are jointly and severally responsible for each other's negligence.

98.     At all times material thereto, CELEBRITY and DOLPHIN ENCOUNTERS:

A. Had an intention to create a joint venture;

B. Had a joint propriety interest in the subject manner of the venture;

C. Had mutual control and/or joint control over the subject matter of the venture with respect to the provisions of the excursions to passengers aboard the ship;

D. Had a right to share in the profits of the joint venture; and

E. Would share losses that may have been sustained.

99.    As joint venturers, CELEBRITY and DOLPHIN ENCOUNTERS are liable for each other's negligence. As a result, CELEBRITY is liable for the negligent conduct of DOLPHIN ENCOUNTERS.

100.    As a result of the foregoing negligence, which was the direct and proximate cause of BUSTAMANTE'S injuries, BUSTAMANTE suffered bodily injury and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings. These losses are either permanent or continuing.

101.    Furthermore, Defendants are liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY and DOLPHIN ENCOUNTERS, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced

in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

### COUNT V
### CLAIM FOR JOINT VENTURE BETWEEN
### DEFENDANTS, XYZ CORP. AND DOLPHIN ENCOUNTERS

102.    BUSTAMANTE re-alleges all allegations pled in paragraphs 1 through 59 above as if alleged fully herein.

103.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS were engaged in a joint venture to provide excursions to cruise ship passengers and other customers.

104.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS entered into an agreement where XYZ CORP. would provide the premises for use by DOLPHIN ENCOUNTERS and its excursions, and DOLPHIN ENCOUNTERS would operate the excursions.

105.    As part of the joint venture, DOLPHIN ENCOUNTERS arranged for, sponsored, recommended, marketed, operated, sold, and/or collected money for the subject excursion and the money was then shared between XYZ CORP. and DOLPHIN ENCOUNTERS. As its part of the joint venture, DOLPHIN ENCOUNTERS provided labor and/or operated the subject excursion.

106.    DOLPHIN ENCOUNTERS, on behalf of the joint venture, collected a fee from CELEBRITY for its excursions. The fee was split between XYZ CORP. and DOLPHIN ENCOUNTERS.

107.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS had joint and/or shared control over each aspect of the joint venture.

108.    DOLPHIN ENCOUNTERS had control over the day-to-day working of the excursion(s).

109.    XYZ CORP. exercises control over the subject excursion by way of its requirements for its inspection, maintenance, and other matters pertaining to safety.

110.    XYZ CORP. had control over the inspection, maintenance, and other matters pertaining to safety.

111.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS shared a common purpose: to operate the subject excursion for a profit.

112.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS had a propriety and/or ownership interest in the subject excursion. XYZ CORP. had an interest in inspecting, maintaining, and other matters pertaining to safety in regards to the subject excursion, and DOLPHIN ENCOUNTERS had a propriety interest in the time and labor expended in operating the subject excursion.

113.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS shared any losses sustained from the joint venture.

114.    XYZ CORP. and DOLPHIN ENCOUNTERS are jointly and severally responsible for each other's negligence.

115.    At all times material thereto, XYZ CORP. and DOLPHIN ENCOUNTERS:

    F.   Had an intention to create a joint venture;

    G.   Had a joint propriety interest in the subject manner of the venture;

    H.   Had mutual control and/or joint control over the subject matter of the venture with respect to the provisions of the excursions;

    I.   Had a right to share in the profits of the joint venture; and

J.    Would share losses that may have been sustained.

116.    As joint venturers, XYZ CORP. and DOLPHIN ENCOUNTERS are liable for each other's negligence. As a result, DOLPHIN ENCOUNTERS is liable for the negligent conduct of XYZ CORP.

117.    As a result of the foregoing negligence, which was the direct and proximate cause of BUSTAMANTE's injuries, BUSTAMANTE suffered bodily injury and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings. These losses are either permanent or continuing.

118.    Furthermore, Defendants are liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

119.    To the extent any of the allegations in this count contradict BUSTAMANTE's allegations regarding joint venture as to CELEBRITY and DOLPHIN ENCOUNTERS, these allegations are alleged in the alternative.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against XYZ CORP. and DOLPHIN ENCOUNTERS, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT VI
## <u>CLAIM FOR NEGLIGENCE AGAINST DOLPHIN ENCOUNTERS</u>

120.    BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forth herein.

121.    At all times material thereto, DOLPHIN ENCOUNTERS owned and/or operated the subject excursion.

122.    It was DOLPHIN ENCOUNTERS', duty to provide BUSTAMANTE with reasonable care under the circumstances.

123.    DOLPHIN ENCOUNTERS and/or its agents, servants, joint venturers and/or employees, breached their duty to provide BUSTAMANTE with reasonable care under the circumstances by, among other things:

    a. Providing an excursion site that had a dangerous walkway that was not level, did not have level sand, had a dangerous section of the walk way that dropped off, that camouflaged these dangers, and was otherwise dangerous;

    b. The use of poorly trained tour guides and excursion employees, agents, or servants;

    c. The inadequate supervision of the excursion site, the subject area, and passengers such as BUSTAMANTE;

    d. The inadequate supervision of passengers so as to prevent passengers suffering from previous injuries from being exposed to unnecessary risks such as those encountered during the excursion;

    e. The shore excursion employees, agents, or servants were not properly trained or experienced;

    f. There was no adequate warning given to passengers such as BUSTAMANTE of the dangers;

    g. The shore excursion employees were inattentive to the health and conditions of the passengers and to the dangerous condition BUSTAMANTE encountered;

    h. The shore excursion had prior incidents and/or reports of safety issues; and/or

    i. Failure to monitor the excursion;

j.  Failing to inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

k.  Failing to adequately inspect and maintain the excursion site and the subject area prior to use by its passengers;

l.  Failing to train crew members, excursion employees/agents, and/or other workers in the proper procedures for identifying risk-creating conditions such as those BUSTAMANTE encountered;

m.  Failing to investigate the safety practices of the excursion site and the tour operator;

n.  Failing to supervise the operations and safety procedures of the excursion site and the tour operator;

o.  Failing to remedy the dangerous and/or risk-creating condition within a reasonable amount of time which allowed the known hazard to persist and exposed passengers to unreasonable danger;

p.  The subject excursion workers were not adequately trained or competent to handle emergency situations such as BUSTAMANTE'S incident;

q.  The subject excursion operators did not have adequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

r.  The subject excursion operators did not adequately assist and/or supervise passengers such as BUSTAMANTE;

s.  The excursion employees, agents, or servants were not properly trained or experienced.

124.  The dangerous and/or risk-creating conditions of the subject excursion were not

open and obvious to BUSTAMANTE;

125.  DOLPHIN ENCOUNTERS:

A.  Had actual knowledge of the dangerous and/or risk-creating conditions aboard the

subject excursion:

i.  Received guest feedback of the tour in comment forms from previous participants/patrons/others within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

ii.   Received complaints from previous passengers within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

iii.   Was told by passengers, patrons, customers, invitees, and others that they suffered injuries during the subject excursion as a result of the tour operator/DOLPHIN ENCOUNTERS' negligent operation of same, i.e. as a result of the dangerous, risk-creating, and/or defective conditions of the subject excursion.

B.   Had constructive knowledge of the unreasonably dangerous and/or risk-creating

conditions as they:

a)   Existed for a sufficient length of time so that DOLPHIN ENCOUNTERS should have known of them by the exercise of ordinary care when visiting the site to ensure it is safe for passengers, patrons, customers, invitees, and others;

b)   Previous incident(s) such as BUSTAMANTE'S occurred, and or complaint(s) about the dangerous, risk-creating, and/or defective conditions of the subject excursion, which are outlined in the "General Allegations" section of this complaint, were made, so as to impute notice upon DOLPHIN ENCOUNTERS;

c)   Created the dangerous and/or risk-creating conditions;

d)   Caused BUSTAMANTE'S injuries through vicarious liability for affirmative act(s), rather than solely through premises liability, for which notice is not required.

126.   DOLPHIN ENCOUNTERS knew or should have known of the foregoing

conditions causing the subject incident and did not correct them, and/or the condition existed for

a sufficient length of time so that the excursion providers, in the exercise of reasonable care under

the circumstances, should have learned of them and corrected them.

127.   As a direct and proximate result of the breach of the duty alleged above,

BUSTAMANTE suffered grievous bodily injury and possibly aggravation of pre-existing

conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the

enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of

earnings. These losses are either permanent or continuing.

128.     Under the legal theory of direct or apparent agency, CELEBRITY, DOLPHIN ENCOUNTERS, and XYZ CORP. are liable for the negligence of each other.

129.     Defendants, CELEBRITY, DOLPHIN ENCOUNTERS, and XYZ CORP. are jointly and severally responsible and liable for one another's negligence, both under the legal theory of joint venture, and otherwise.

130.     Furthermore, DOLPHIN ENCOUNTERS is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against DOLPHIN ENCOUNTERS, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT VII
## CLAIM FOR NEGLIGENCE AGAINST XYZ CORP.

131.     BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forth herein.

132.     At all times material thereto, XYZ CORP. owned and/or operated the subject excursion.

133.     It was XYZ CORP.'s, duty to provide BUSTAMANTE with reasonable care under

the circumstances.

134.  XYZ CORP. and/or its agents, servants, joint venturers and/or employees, breached their duty to provide BUSTAMANTE with reasonable care under the circumstances by, among other things:

a.  Providing an excursion site that had a dangerous walkway that was not level, did not have level sand, had a dangerous section of the walk way that dropped off, that camouflaged these dangers, and was otherwise dangerous;

b.  The use of poorly trained tour guides and excursion employees, agents, or servants;

c.  The inadequate supervision of the excursion site, the subject area, and passengers such as BUSTAMANTE;

d.  The inadequate supervision of passengers so as to prevent passengers suffering from previous injuries from being exposed to unnecessary risks such as those encountered during the excursion;

e.  The shore excursion employees, agents, or servants were not properly trained or experienced;

f.  There was no adequate warning given to passengers such as BUSTAMANTE of the dangers;

g.  The shore excursion employees were inattentive to the health and conditions of the passengers and to the dangerous condition BUSTAMANTE encountered;

h.  The shore excursion had prior incidents and/or reports of safety issues; and/or

i.  Failure to monitor the excursion;

j.  Failing to inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

k.  Failing to adequately inspect and maintain the excursion site and the subject area prior to use by its passengers;

l.  Failing to train crew members, excursion employees/agents, and/or other workers in the proper procedures for identifying risk-creating conditions such as those BUSTAMANTE encountered;

m.  Failing to investigate the safety practices of the excursion site and the tour operator;

n. Failing to supervise the operations and safety procedures of the excursion site and the tour operator;

o. Failing to remedy the dangerous and/or risk-creating condition within a reasonable amount of time which allowed the known hazard to persist and exposed passengers to unreasonable danger;

p. The subject excursion workers were not adequately trained or competent to handle emergency situations such as BUSTAMANTE'S incident;

q. The subject excursion operators did not have adequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

r. The subject excursion operators did not adequately assist and/or supervise passengers such as BUSTAMANTE;

s. The excursion employees, agents, or servants were not properly trained or experienced.

135. The dangerous and/or risk-creating conditions of the subject excursion were not open and obvious to BUSTAMANTE;

136. XYZ CORP.:

C. Had actual knowledge of the dangerous and/or risk-creating conditions aboard the subject excursion:

i. Received guest feedback of the tour in comment forms from previous participants/patrons/others within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

ii. Received complaints from previous passengers, patrons, customers, invitees, and others, within five years prior to BUSTAMANTE'S incident about the dangerous, risk-creating, and/or defective conditions of the subject excursion;

iii. Was told by passengers, patrons, customers, invitees, and others that they suffered injuries during the subject excursion as a result of the tour operator/XYZ CORP.'s negligent operation of same, i.e. as a result of the dangerous, risk-creating, and/or defective conditions of the subject excursion.

D. Had constructive knowledge of the unreasonably dangerous and/or risk-creating conditions as they:

e) Existed for a sufficient length of time so that XYZ CORP. should have known of them by the exercise of ordinary care when visiting the site to ensure it is safe for passengers, patrons, customers, invitees, and others;

f) Previous incident(s) such as BUSTAMANTE'S occurred, and or complaint(s) about the dangerous, risk-creating, and/or defective conditions of the subject excursion, which are outlined in the "General Allegations" section of this complaint, were made, so as to impute notice upon XYZ CORP.;

g) Created the dangerous and/or risk-creating conditions;

h) Caused BUSTAMANTE'S injuries through vicarious liability for affirmative act(s), rather than solely through premises liability, for which notice is not required.

137.   XYZ CORP. knew or should have known of the foregoing conditions causing the subject incident and did not correct them, and/or the condition existed for a sufficient length of time so that the excursion providers, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

138.   As a direct and proximate result of the breach of the duty alleged above, BUSTAMANTE suffered grievous bodily injury and possibly aggravation of pre-existing conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery medical care and treatment and loss of earnings. These losses are either permanent or continuing.

139.   Under the legal theory of direct or apparent agency, CELEBRITY, DOLPHIN ENCOUNTERS, and XYZ CORP. are liable for the negligence of each other.

140.   Defendants, CELEBRITY, DOLPHIN ENCOUNTERS, and XYZ CORP. are jointly and severally responsible and liable for one another's negligence, both under the legal theory of joint venture, and otherwise.

141.   Furthermore, XYZ CORP. is liable for any damages to BUSTAMANTE caused or

aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

      **WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against XYZ CORP., for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT VIII
## BUSTAMANTE'S CLAIM FOR BREACH OF THIRD-PARTY BENEFICIARY CONTRACT BETWEEN DEFENDANTS, CELEBRITY AND DOLPHIN ENCOUNTERS

142.    BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forth herein.

143.    CELEBRITY and DOLPHIN ENCOUNTERS entered into a contract whereby DOLPHIN ENCOUNTERS would provide for the passengers of CELEBRITY the subject excursion. This contract provided that DOLPHIN ENCOUNTERS would provide a safe and secure excursion for the CELEBRITY cruise line passengers. The terms of the contract were either oral or in writing. If the contract is in writing, the Defendants have a copy of it.

144.    An implied term of the subject contract between CELEBRITY and DOLPHIN ENCOUNTERS is that DOLPHIN ENCOUNTERS will provide a safe and secure excursion for CELEBRITY passengers.

145.    The contract between the parties also provided that DOLPHIN ENCOUNTERS would provide, for the passengers of CELEBRITY and for the benefit of CELEBRITY, safe

excursions that met or exceeded the highest industry safety standards for the benefit of CELEBRITY's passengers. The implied or expressed terms of this contract are that both parties would manage a sufficiently and reasonably safe excursion and provide for the safety and security of CELEBRITY passengers.

146.   The intended third-party beneficiaries of this contract between the parties were all of the CELEBRITY cruise passengers who participated in this excursion, including BUSTAMANTE.

147.   CELEBRITY breached the third-party beneficiary contract by failing to provide a reasonably safe and secure excursion for its passengers, and by their actions and conduct including but not limited to the following:

    a. Providing an excursion site that had a dangerous walkway that was not level, did not have level sand, had a dangerous section of the walk way that dropped off, that camouflaged these dangers, and was otherwise dangerous;

    b. The use of poorly trained tour guides and excursion employees, agents, or servants;

    c. The inadequate supervision of the excursion site, the subject area, and passengers such as BUSTAMANTE;

    d. The inadequate supervision of passengers so as to prevent passengers suffering from previous injuries from being exposed to unnecessary risks such as those encountered during the excursion;

    e. The shore excursion employees, agents, or servants were not properly trained or experienced;

    f. There was no adequate warning given to passengers such as BUSTAMANTE of the dangers;

    g. The shore excursion employees were inattentive to the health and conditions of the passengers and to the dangerous condition BUSTAMANTE encountered;

    h. The shore excursion had prior incidents and/or reports of safety issues; and/or

    i. Failure to monitor the excursion;

j.   Failing to inspect the property/premises to identify and remedy the dangerous and/or risk-creating condition;

k.   Failing to adequately inspect and maintain the excursion site and the subject area prior to use by its passengers;

l.   Failing to train crew members, excursion employees/agents, and/or other workers in the proper procedures for identifying risk-creating conditions such as those BUSTAMANTE encountered;

m.   Failing to investigate the safety practices of the excursion site and the tour operator;

n.   Failing to supervise the operations and safety procedures of the excursion site and the tour operator;

o.   Failing to remedy the dangerous and/or risk-creating condition within a reasonable amount of time which allowed the known hazard to persist and exposed passengers to unreasonable danger;

p.   The subject excursion workers were not adequately trained or competent to handle emergency situations such as BUSTAMANTE'S incident;

q.   The subject excursion operators did not have adequate first aid and/or other medical supplies to treat persons injured on the subject excursion; and/or

r.   The subject excursion operators did not adequately assist and/or supervise passengers such as BUSTAMANTE;

s.   The excursion employees, agents, or servants were not properly trained or experienced.

148.   As a result of the breaches of the third-party beneficiary contract by CELEBRITY, there was inadequate and inappropriate security and safety at the subject event and/or inadequate and unreasonable failures to warn of the dangers and activities at the event.

149.   As a result of these breaches of the third-party beneficiary contract by CELEBRITY, BUSTAMANTE suffered severe debilitating, and permanent injuries, medical expenses, lost wages, and loss of ability to earn income both in the past and in the future, and has suffered and will continue to suffer pain and suffering, loss of enjoyment of life, mental anguish, disability, physical impairment, disfigurement, both in the past and in the future.

150.    Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, the Plaintiff, SHEILA BUSTAMANTE, demands Judgment against CELEBRITY for breaches of third-party beneficiary contract, the intended beneficiaries of which are the CELEBRITY passengers, including BUSTAMANTE. and the consequential damages which include but are not limited to damages suffered as a result of BUSTAMANTE's bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical, psychological, and rehabilitation expense, expense of hospitalization, ongoing medical and psychological care, treatment, and rehabilitation, nursing care and treatment, loss of earnings, and loss of ability to earn money, both in the past and in the future, travel expenses of BUSTAMANTE and her family, and all other damages which have been incurred or suffered in the past and which will be incurred or suffered in the future; all court costs, all interest including pre-judgment and post judgment interest, and any and all other damages which the Court deems just or appropriate.

## COUNT IX
## VICARIOUS LIABILITY FOR THE NEGLIGENCE
## OF THE SHIP'S MEDICAL STAFF AS TO CELEBRITY

151.    BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forththerein.

152.    CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

153.    Such duties include, but are not limited to, providing such medical care and

assistance as would an ordinarily prudent person under the circumstances.

154.    At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full time employees and agents of CELEBRITY, subject to its direction and control, who were engaged in the activity of discharging CELEBRITY's obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

155.    CELEBRITY is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

156.    CELEBRITY directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

157.    CELEBRITY created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

158.    CELEBRITY pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

159.    CELEBRITY collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the cruise ship.

160.    CELEBRITY's marketing materials described the infirmary in proprietary language.

161.    The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular,

the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CELEBRITY.

162.    CELEBRITY provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

163.    CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent by failing to adequately examine, diagnose, and/ or treat BUSTAMANTE'S injuries.

164.    Furthermore, CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating BUSTAMANTE lacked adequate experience in treating injuries such as the one BUSTAMANTE suffered.

165.    CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, also breached its duties and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat BUSTAMANTE'S injuries.

166.    Moreover, CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent by failing to take proper measures to ensure that BUSTAMANTE was able to obtain the medical treatment he needed in a reasonable amount of time, and as a result, BUSTAMANTE suffered additional injuries and/or BUSTAMANTE'S injuries were aggravated and made worse.

167.    Additionally, at all times material hereto, CELEBRITY, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and

breached its duties as follows:

    a.    Failing to promptly provide BUSTAMANTE with proper and/or adequate medical care and attention;

    b.    Failing to timely and properly diagnose BUSTAMANTE'S medical condition;

    c.    Failing to attend to BUSTAMANTE and her injuries;

    d.    Failing to adequately escort BUSTAMANTE and/or follow up with BUSTAMANTE to ensure that she received reasonable medical care;

    e.    Failing to provide reasonable medical care;

    f.    Failing to properly treat and care for BUSTAMANTE;

    g.    Failing to reasonably diagnose BUSTAMANTE'S injuries;

    h.    Failing to properly examine BUSTAMANTE'S injuries;

    i.    Failing to send BUSTAMANTE, and to make reasonable arrangements for BUSTAMANTE to be sent, to a medical facility that could adequately treat her;

    j.    By failing to take proper measures to secure adequate treatment for BUSTAMANTE, including unreasonably delaying taking measures to secure such adequate treatment;

    k.    Failing to medevac BUSTAMANTE and/or to arrange for BUSTAMANTE to be promptly taken back to the United States to receive the treatment she needed; and/or

    l.    Failing to give BUSTAMANTE proper discharge instructions.

    168.    Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of employment and/or agency.

    169.    CELEBRITY is therefore vicariously liable for all injuries and damages sustained

by BUSTAMANTE as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

170.    At all times material hereto, the aforementioned acts or omissions on the part of the CELEBRITY's ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

171.    The negligence of CELEBRITY's ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused BUSTAMANTE great bodily harm in that, but for CELEBRITY's negligence, BUSTAMANTE'S injuries would not have occurred and/or said injuries would have been substantially lessened.

172.    CELEBRITY, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

173.    As a direct, proximate, and foreseeable result of the CELEBRITY's negligence, BUSTAMANTE has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

174.    The losses are either permanent or continuing in nature.

175.    Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain

and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT X
## APPARENT AGENCY AGAINST CELEBRITY
## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

176.     BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forth herein.

177.     At all times material hereto, the ship's medical staff were represented to BUSTAMANTE and the ship's passengers as employees and/or agents and/or servants of CELEBRITY, in that:

a. The medical staff wore a ship's uniform;
b. The medical staff ate with the ship's crew;
c. The medical staff was under the commands of the ship's officers;
d. The medical staff worked in the ship's medical department;
e. The medical staff was paid a salary by CELEBRITY;
f. The medical staff worked aboard the cruise ship;
g. The medical staff spoke to BUSTAMANTE as though they had authority to do so by CELEBRITY.

178.     At no time did CELEBRITY represent to BUSTAMANTE in particular, or the ship's passengers in general, in a meaningful way that the cruise ship's medical staff were not agents or employees of CELEBRITY.

179.     At all material times, BUSTAMANTE reasonably relied on the representations to his detriment that the medical staff were employees, and/or agents, and/or servants of CELEBRITY.

180.   It was reasonable to believe that the medical staff were CELEBRITY's agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CELEBRITY.

181.   This reasonable reliance was detrimental because it significantly delayed BUSTAMANTE from receiving proper medical treatment and/or BUSTAMANTE would not have gone on the subject cruise with CELEBRITY had she known that the medical staff on the ship were not CELEBRITY's agents.

182.   CELEBRITY is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

183.   CELEBRITY had a duty to provide BUSTAMANTE with reasonable care under the circumstances and through the acts of its apparent agent breached its duty to provide her with reasonable care under the circumstances.

184.   BUSTAMANTE'S injuries were accelerated due to the fault and/or negligence of CELEBRITY through the acts of its apparent agents as follows:

a.   Failing to promptly provide BUSTAMANTE with proper and/or adequate medical care and attention;

b.   Failing to timely and properly diagnose BUSTAMANTE'S medical condition;

c.   Failing to attend to BUSTAMANTE and her injuries;

d.   Failing to adequately escort BUSTAMANTE and/or follow up with BUSTAMANTE to ensure that she received reasonable medical care;

e.   Failing to provide reasonable medical care;

f.   Failing to properly treat and care for BUSTAMANTE;

g.      Failing to reasonably diagnose BUSTAMANTE'S injuries;

h.      Failing to properly examine BUSTAMANTE'S injuries;

i.      Failing to send BUSTAMANTE, and to make reasonable arrangements for BUSTAMANTE to be sent, to a medical facility that could adequately treat her;

j.      By failing to take proper measures to secure adequate treatment for BUSTAMANTE, including unreasonably delaying taking measures to secure such adequate treatment;

k.      Failing to medevac BUSTAMANTE and/or to arrange for BUSTAMANTE to be promptly taken back to the United States to receive the treatment she needed; and/or

l.      Failing to give BUSTAMANTE proper discharge instructions.

185.    At all times material hereto, the aforementioned acts or omissions on the part of the CELEBRITY fell below the standard of care.

186.    CELEBRITY's negligence proximately caused BUSTAMANTE great bodily harm in that, but for CELEBRITY's negligence, BUSTAMANTE'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

187.    CELEBRITY, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

188.    As a direct, proximate, and foreseeable result of the CELEBRITY's negligence, BUSTAMANTE has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

189.    The losses are either permanent or continuing in nature.

190.     BUSTAMANTE has suffered these losses in the past and will continue to suffer such loses in the future.

191.     Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

**WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## COUNT XI
## ASSUMPTION OF DUTY –
## NEGLIGENCE OF THE SHIP'S MEDICAL STAFF AS TO CELEBRITY

192.     BUSTAMANTE hereby adopts and re-alleges each and every allegation in paragraphs 1 through 59 as if set forth herein.

193.     CELEBRITY owed BUSTAMANTE the duty to exercise reasonable care under the circumstances for the safety of its passengers.

194.     Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

195.     CELEBRITY elected to discharge this duty by having BUSTAMANTE seen by its own ship's physicians and/or other crew members.

196.     As such, CELEBRITY voluntarily assumed a duty for the benefit of

BUSTAMANTE to use reasonable care in the provision of medical services to BUSTAMANTE.

197.    CELEBRITY breached its duties, and was negligent by failing to adequately examine, diagnose, and/or treat BUSTAMANTE'S injuries.

198.    Furthermore, CELEBRITY breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating BUSTAMANTE lacked adequate experience in treating injuries such as the one BUSTAMANTE suffered.

199.    CELEBRITY also breached its duties and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat BUSTAMANTE'S injuries.

200.    CELEBRITY breached its duties and was negligent by failing to take proper measures to ensure that BUSTAMANTE was able to obtain the medical treatment he needed in a reasonable amount of time, and as a result, BUSTAMANTE suffered additional injuries and/or BUSTAMANTE'S injuries were aggravated and made worse.

201.    Additionally, at all times material hereto, CELEBRITY was careless, negligent, and breached its duties as follows:

a.    Failing to promptly provide BUSTAMANTE with proper and/or adequate medical care and attention;

b.    Failing to timely and properly diagnose BUSTAMANTE'S medical condition;

c.    Failing to attend to BUSTAMANTE and her injuries;

d.    Failing to adequately escort BUSTAMANTE and/or follow up with BUSTAMANTE to ensure that she received reasonable medical care;

e.    Failing to provide reasonable medical care;

f.      Failing to properly treat and care for BUSTAMANTE;

g.      Failing to reasonably diagnose BUSTAMANTE'S injuries;

h.      Failing to properly examine BUSTAMANTE'S injuries;

i.      Failing to send BUSTAMANTE, and to make reasonable arrangements for BUSTAMANTE to be sent, to a medical facility that could adequately treat her;

j.      By failing to take proper measures to secure adequate treatment for BUSTAMANTE, including unreasonably delaying taking measures to secure such adequate treatment;

k.      Failing to medevac BUSTAMANTE and/or to arrange for BUSTAMANTE to be promptly taken back to the United States to receive the treatment she needed; and/or

l.      Failing to give BUSTAMANTE proper discharge instructions.

202.    At all times material hereto, the aforementioned acts or omissions on the part of the CELEBRITY fell below the standard of care.

203.    CELEBRITY's negligence proximately caused BUSTAMANTE great bodily harm in that, but for CELEBRITY's negligence, BUSTAMANTE'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

204.    CELEBRITY, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

205.    As a direct, proximate, and foreseeable result of the CELEBRITY's negligence, BUSTAMANTE has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability to earn money.

206.    The losses are either permanent or continuing in nature.

207.    BUSTAMANTE has suffered these losses in the past and will continue to suffer such loses in the future.

208.    Furthermore, CELEBRITY, is liable for any damages to BUSTAMANTE caused or aggravated by medical malpractice by shoreside doctors and medical personnel that treated BUSTAMANTE for her injuries caused by their negligence.

        **WHEREFORE**, Plaintiff, SHEILA BUSTAMANTE, demands judgment against CELEBRITY, for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, travel expenses of BUSTAMANTE and her family, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs, pre-judgment and post-judgment interest.

## <u>DEMANDS FOR JURY TRIAL</u>

        Plaintiff, SHEILA BUSTAMANTE, hereby demands trial by jury on all issues so triable of right.

DATED this 31st day of January, 2022.

                                        Respectfully submitted,

                                        */s/ Matthias M. Hayashi*
                                        **Spencer M. Aronfeld, Esq.**
                                        Florida Bar No.: 905161
                                        aronfeld@Aronfeld.com
                                        **Abby Hernández Ivey, Esq.**
                                        Florida Bar No.: 1002774
                                        aivey@aronfeld.com
                                        **Matthias M. Hayashi, Esq.**
                                        Florida Bar No.: 0115973
                                        mhayashi@aronfeld.com
                                        **ARONFELD TRIAL LAWYERS**

1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:       (305) 441.0440
F:       (305) 441.0198
***Attorneys for Plaintiff***